HAMITER, Justice.
About 7:30 o’clock of the evening of May 3, 1953, while seated in the bed room of an apartment located in the City of Vivian of Caddo Parish, Mrs. Shirley Ann Whatley was wounded in the right arm and *499 chest by the discharge of a shell from a 12 gauge shot gun in the hands of her husband, George W. Whatley, who was nearby in the same room. No person other than those two witnessed the shooting.
Several minutes later Dr. Seals S. Speer, who resided about one and one-half blocks away and had been summoned to the scene, found the wife in an unconscious condition lying on the ground outside and a few feet from the apartment’s rear entrance. Observing that she still lived and had a strong pulse beat, he hurried her by ambulance to his local clinic and began emergency treatment.
About twenty minutes thereafter she died, and her body was removed to the Hanner Funeral Home of Vivian. There Dr. Charles S. Boone, chief deputy coroner of Caddo Parish, examined it the same night. However, he performed no autopsy.
Subsequently, the husband, George W. Whatley, was indicted for the murder of his wife, was tried on that charge, and was convicted and sentenced for the crime of manslaughter. He is appealing.
In the prosecution of this appeal, relying on nine reserved and perfected bills of exceptions which they have grouped and argued as one bill, counsel for the defendant (to quote from their brief) initially state:
“The defense was that the shooting was accidental and the State’s contention was that during an argument George Whatley purposefully shot his wife. The defense contended that Whatley carried his wife out of the house and the State contended that Shirley Ann Whatley walked or ran out of the house. * * *
* * ;(; * * #
“ * * * the big question on the trial of this case was whether Shirley Ann was carried out of the house by George Whatley or whether she walked or ran out herself. If the jury found she was carried out, Whatley was acquitted. On the other hand, if the jury found she ran or walked out he was convicted. We submit that if Dr. Boone and Dr. Speer had not been allowed to testify that in their opinion she could have run out, then the verdict would have been acquittal and the evidence before this Court fully bears that out. As previously stated, all the evidence is in the transcript.
“All of the Bills of Exceptions 1, 2, 3, 4,. 7,. 8, 9, 10, and 11 relate to objections to-questions asked Dr. Boone and Dr. Speer, along that line. * * * ”
In considering such objections it is important to notice first that neither of the witnesses expressed a belief that the wife did walk or run out of the house. Rather, each, in the capacity of a medical expert and having made a personal examination, merely said that in his opinion it was possible for her to do so. In fact, each conceded, under cross examination, that shock resulting from the shot gun blast *501 could have immediately rendered her unconscious and, hence, incapable of moving.
To be noted also is the defense’s admission that both witnesses qualified as experts. In this regard, again quoting from counsel’s brief, it is said: “We are not questioning Dr. Boone’s qualifications nor Dr. Speer’s qualifications as a medical expert witness. They are both qualified as medical expert witnesses because they are licensed to practice medicine in Louisiana; * * ‡'»
Appropriate, therefore, are the following provisions contained in the Louisiana Code of Criminal Procedure:
“On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony.” LSA-R.S. 15:464.
“Every expert witness must state the facts upon which his opinion is based.” LSA-R.S. 15:465.
All of the objections urged here by appellant, as we understand them, are grounded on the contention that there was no compliance with the latter provision.
The expressed opinion of each expert that it was possible for Mrs. Whatley to walk or run immediately following the shooting was based largely, although not wholly, on a finding that no major blood vessel was severed. As to this, Dr. Speer, who had observed her experiencing a strong pulse beat at the scene and thereafter had rendered emergency treatment at his clinic, testified: “We know that, at the heavy velocity the shot was traveling, it can crush a vessel. Now, it did not sever any big vessel, or she would have-bled to death before I got there. Now, there might have been some crushed by the shot that did not bleed. I think they were all smaller blood vessels because, after seeing later, where the shot were in her back, it was away from the hilus of the lung. I mean, that is where the larger blood vessels come out to feed the lung tissue, and it was away from that area.”
Later, that physician was asked: “From your examination of the body at the scene and from your taking of the pulse at the scene and from your medical knowledge of the wound, I will ask you whether or not it is your opinion that Shirley Ann Whatley could have gone out of that house under her own force or abilities, either walking or running?” He answered: “Well, you can place a human in the category with any type of animal. Anyone who has hunted knows a wounded animal can go a long ways after they are mortally wounded. In other words, like shooting a deer or something like that. Like I say, you can place a human being in the same category with any animal. Anyone who has hunted has seen animals that were shot where you think they should have dropped immediately, continue to go a lot longer and farther than you thought possible, and it is *503 -possible she could have gotten up and gotten out, under her own power. Of course, that is just an opinion.”
Dr. Boone, the chief deputy coroner who examined the body at the funeral home shortly after Mrs. Whatley expired, testified that in making his examination he put his fingers through the wound to the posterior aspect of the thorax where the pellets stopped; that he felt the blood vessels; and that no main ones had been severed. Thereafter, he said: “In my opinion, Mrs. Whatley could have run out of the house on her own power. * * * I base my opinion first, on the fact that she lived the time she did and second, that this wound was not in a place where it would have killed her instantly. * * * And, that for us to breathe and live, we only need one-third of all our lungs, and she had only a portion of the right lung that the hemorrhage, in the beginning, was in. The thoracic cavity was not filled with blood at that time. It was filled later, because the blood vessels would have bled more as that went on, of course. * * * The supra-renal glands are two small structures that are about as big as the end of my thumb. They are flat and thin. They throw out into the system adrenalin, and adrenalin is the thing that stimulates a person to either fight or run, and, in this case, with the blast and the suprarenals stimulating this patient, she definitely could have run out there easily.”
Defense counsel complain that “the-opinion that she could run out of the house-was not based on facts, but was based on-a prior opinion that no major blood vessels-were severed.” The physicians, as before-shown, had the opportunity to and did', carefully examine the wound of Mrs.. Whatley. And by reason of the examinations, along with the aid of their medical" knowledge, both were able to and did conclude that no major blood vessels were affected. The conclusions in this respect were, therefore, not mere expressions of opinions; they were findings of medical, fact.
Further, counsel urge that “the-doctors did not state sufficient facts upon-which they should be allowed to give an; expert opinion.” It is noticed that each expert recited in detail the reasons for his: opinion, all of which were relevant; and. this seems to have satisfied the requirement that he “must state the facts upon which his opinion is based.” Of course, the facts, thus recited might not have been sufficient, in substance to justify (from the standpoint of soundness) the opinions expressed, as. defense counsel apparently contend herein.. But whether they were or were not was. a question for the jury’s determination.
Moreover, as was well said by the trial! judge in his per curiam, “ * * * if they were not sufficient for the doctor to base an opinion upon, we think the defendant’s, remedy was to rebut this testimony with, *505 ■other medical testimony and certainly not to ask the Court to rule that the doctor did not know what he was talking about.”
In insisting that the physicians’ opinions were not predicated on sufficient facts, defense counsel rely principally on State v. Eisenhardt, 185 La. 308, 169 So. 417, 427. Obviously, the cases are distinguishable. Therein, a medical expert “was not allowed to tell the jury that from one observation he made on or about May 27th he thought James was feeble-minded on or about April 7th.” The reason for the exclusion of the opinion, of course, was that no pertinent facts could be or were given by the witness on which to predicate it.
Likewise not in point are the two civil cases cited. In controversies of that nature the question of the sufficiency of the evidence is determinable by an appellate court. The same is not true, on the other hand, in criminal prosecutions.
The above mentioned bill of exceptions No. 11, which was taken to the overruling of a motion for a new trial, includes, in addition to the objections already discussed, the general complaint that the verdict of the jury was contrary to the law and the evidence. The complaint, under our settled jurisprudence, furnishes nothing for our review.
For the reasons assigned the conviction and sentence are affirmed.
PONDER, J., absent.